

U.S. Department of Housing and Urban Development

Pennsylvania State Office
The Wanamaker Building
100 Penn Square East
Philadelphia, Pennsylvania 19107-3389

## DETERMINATION

**CASE NAME: Hassan, Mustafa v. Foxchase of Alexandria**
**CASE NUMBER: 03-04-0236-8**

### I.    JURISDICTION

A complaint was filed with HUD on March 31, 2004 alleging that Mr. Hassan was injured by a discriminatory act. It is alleged that the Respondents were responsible for: discriminatory refusal to rent; discriminatory terms, conditions, privileges, or services and facilities; and discriminatory acts under section 818 (coercion, etc.). It is alleged that the Respondents' acts were based on race, national origin and religion and that the Respondents retaliated against Mr. Hassan because he had exercised his fair housing rights. The most recent act is alleged to have occurred on January 16, 2004. The property, called Foxchase of Alexandria, is located at: 310 N. Howard Street, Apt. 103, Alexandria, VA 22304. The property in question is not exempt under the applicable statutes. If proven, the allegation(s) would constitute a violation of Sections 804a or f, 804b or f and 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

The Respondents receive federal funding in the form of:

HUD Assisted Housing (202, 811, 221D4, Project Based Section 8)

Mr. Hassan has also alleged violations of Title VI of the 1964 Civil Rights Act by the respondent(s). (Hassan v. Foxchase of Alexandria, 03-04-0039-6, filed April 6, 2004).

### II.    COMPLAINANT ALLEGATIONS

On or about October 15, 2003, Complainant Mustafa Hassan and Respondents received a notice that the fair housing complaint Mr. Hassan had previously filed against Foxchase of Alexandria, (HUD case number 03-03-0235-8, filed on May 14, 2003), was being closed. Shortly thereafter, the Respondents began eviction proceedings against Mr. Hassan. Mr. Hassan stated that he was withholding his rent until certain things were fixed in the apartment. Complainant alleged that the Respondents refused to replace his rug and refused to paint the apartment because he had filed a previous complaint.

Complainant Hassan stated that he received an eviction notice on January 16, 2004. The local Sheriff came on January 20, 2004 to accomplish the eviction.



Complainant Hassan alleges that the Respondents failed to maintain his unit and evicted him from the unit because of his race (Black), national origin (West Indian), religion (Islam), and in retaliation for filing a previous complaint.

## III.     RESPONDENT DEFENSES

The Respondents state that Mr. Hassan was evicted for non-payment of rent, rather than in retaliation. The Respondents state that Mr. Hassan never made them aware of any maintenance issues within his unit that were so severe that they would justify Mr. Hassan's decision to withhold his rent.

## IV.     FINDINGS AND CONCLUSION

The investigation revealed that Complainant Mustafa Hassan became a resident of Foxchase of Alexandria in May of 1996. Mr. Hassan's rent was subsidized by way of the Section 8 program. Mr. Hassan's portion of the rent was $146.00 at the time of move-in. Mr. Hassans's first several years of residence at Foxchase were apparently without incident.

The investigation revealed that on May 14, 2003, Mr. Hassan filed a fair housing complaint against Foxchase of Alexandria with the Department. This first complaint alleged that Foxchase had barred Mr. Hassan from using the courtesy shuttle bus and refused to paint his unit and to clean or replace his carpeting because of his race, national origin and religion.

In compliance with the cooperative agreement between the Department and the Commonwealth of Virginia, this case was forwarded to the Virginia Fair Housing Office for investigation. After the investigation was complete, the Fair Housing Board for the State of Virginia issued a Determination of "No Reasonable Cause" to believe an unlawful discriminatory housing practice had occurred. The Determination was issued on October 27, 2003.

The investigation revealed that in November of 2003, Complainant Hassan violated his lease by failing to pay his rent. On November 10, 2003, a staff member at Foxchase served Complainant Hassan with a "Late Rent Notice". Despite receiving a notice of unpaid rent, Complainant Hassan again failed to pay his rent for the month of December 2003. Accordingly, in December, management at Foxchase began the process of evicting him.

Complainant Hassan received a Summons for Unlawful Detainer, ordering him to appear before the Alexandria General District Court on December 11, 2003 to answer the civil claim. Complainant Hassan appeared late and judgment was granted to Foxchase of Alexandria. However, Complainant Hassan was given the opportunity to file a motion in a higher court. The judgment was suspended until Complainant Hassan could present his case. When Complainant Hassan appeared before the higher court it was determined that his reason for not paying his rent was insufficient, so the Judge reinstated the judgment.

Complainant Hassan was served an Eviction Notice on January 16, 2004, which stated that Complainant Hassan was advised to vacate the premises by 10:00 a.m. on Tuesday, January 20, 2004.

The subject complaint was filed on March 31, 2004. At the time of filing, Complainant Hassan acknowledged that he had been in arrears in his rent, but stated that he had withheld his rent because the Respondents denied him services. Complainant Hassan further argued that the 'real' reason for his eviction was a desire on the part of the Respondents to retaliate against him for having filed a fair housing complaint.

On August 11, 2004, a sample of files relating to tenants who had been late paying their rent but who had not been evicted was reviewed by the Department's investigator. Eleven of the tenants whose records were examined were African American, one tenant was White and indicated that he had been born in Afghanistan. The tenants all had received numerous notices of late payment of rent. The number of instances ranged between 1 and 11. In each case except one, the tenants had paid their rent in full prior to the issuance of a Notice of Unlawful Detainer. In the last remaining instance, the tenant had been late five times and once received a Notice of Unlawful Detainer before bringing her rent current. This tenant, S.R.[1], continues to live at Foxchase. Significantly, this tenant was African American, practices the Muslim faith, and, several years earlier had sought the intervention of legal aid to prevent an attempt by the respondents to evict her based upon noise complaints. This individual was interviewed during the investigation and stated that she currently had a good relationship with Foxchase Management.

Two tenants besides Ms. S.R., who were identified as having been late to pay their rent, were interviewed during the investigation. These tenants were both African American women. One woman stated that she did not practice any religion; the other identified herself as Baptist. Both women stated that they received notices of late payment of rent on all occasions when they were late to pay. Both women stated that they had paid their rent in full before further action on the part of respondents. Both tenants continued their residence at Foxchase without incident after bringing their rent current.

Therefore, the investigation revealed that the management of Foxchase was consistent in enforcing their policies regarding late payment of rent regardless of whether the tenant in question was Baptist, Muslim, or practiced no religion. Also, the management of Foxchase was consistent in its treatment of tenants who had never filed a complaint with an outside agency and those who had complained and sought redress against Foxchase, like tenant S.R.

With regard to Complainant Hassan's allegation that the management of Foxchase failed to maintain his unit because of his race, religion, or national origin or because he had filed a complaint, the investigation revealed that Complainant Hassan first raised this allegation on April 29, 2003 when he began the process of filing his first complaint (HUD Complaint # 03-03-0235-8).[2] Maintenance to Complainant Hassan's unit was reviewed by the State of Virginia's Fair Housing Office and that investigation found that Complainant Hassan's apartment was painted in September of 2001 and that his carpets had been cleaned. That investigation closed on

---

[1] The witnesses initials are used to preserve her privacy.
[2] The initial allegation was that the respondents provided poor maintenance of his unit because of his race, religion and national origin only. Mr. Hassan added the charge that he was being retaliated against with regard to maintenance after the State of Virginia dismissed his first case.

Case Name: Mustafa Hassan v. Foxchase of Alexandria et al.
Case Number: 03-04-0236-8

3

October 27, 2003 and Complainant Hassan ceased to pay his rent as of November 2003. The investigation by the State of Virginia of maintenance prior to October 2003 did not support that Complainant Hassan was inappropriately denied maintenance services. Beginning November 2003, Complainant Hassan was in violation of his lease for non-payment of rent and facing eviction. The landlord would not be expected to provide new carpeting or painting for a tenant who was in arrears in his or her rent. Therefore, the investigation did not support that the management of Foxchase refused to paint Complainant Hassan's unit or replace his carpet, for discriminatory reasons.

## V.    CONCLUSION

The Department finds that there is not enough evidence to support Complainant Hassan's allegations that he was discriminated against based on his race, national origin, or his religion.

The Department also finds that there is not enough evidence to support Complainant Hassan's allegation that the Respondents retaliated against him by evicting him.

Based upon the information set forth above, there is **no reasonable cause** to believe that the Act has been violated as alleged.

Complainant Hassan's allegations raised under Title VI of the Civil Rights Act will be address by me separate document to be issued later.

## VI.    ADDITIONAL INFORMATION

Notwithstanding this determination by HUD, the Fair Housing Act provides that Mr. Hassan may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained by writing or calling: Wanda Nieves, Fair Housing Regional Director, Department of Housing and Urban Development, Pennsylvania State Office, the Wanamaker Building 100 Penn Square East, PA 19107-3380; telephone: (215) 656-0647.

Wanda Nieves, Director
Fair Housing and Equal Opportunity
Region III

Case Name:  Mustafa Hassan v. Foxchase of Alexandria et al.
Case Number:  03-04-0236-8

5